UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| J.Y., a minor child by his legal guardian, JOYCE THOMAS,<br><br>      Plaintiff,<br><br>  v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1, a Washington municipal corporation,<br><br>      Defendant. | CASE NO. C07-1226-JCC<br><br>ORDER |

  This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 7), Defendant's Response (Dkt. No. 15), which includes a motion to strike, and Plaintiff's Reply (Dkt. No. 22). Having considered the papers submitted, the allegations in the Complaint, and the record in this case, and finding oral argument unnecessary, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 7) and DENIES Defendant's Motion to Strike (Dkt. No. 22), as follows.

**I. BACKGROUND**

  J.Y. lives with his guardian, Joyce Thomas, outside of the Seattle School District ("SSD"). (ALJ Order 3 (Dkt. No. 1 at 9).) In September 2006, Ms. Thomas requested that J.Y. be allowed to enroll in kindergarten at Hawthorne Elementary as a nonresident for the 2006–07 school year. (*Id.*) SSD approved

ORDER – 1

her request, however, in its acceptance letter purported to make the acceptance conditional: "Students are accepted for the school year, provided that the application information was accurate, the student's attendance and behavior while enrolled are satisfactory, and the student's educational program needs remain the same." (*Id*.)

J.Y.'s behavioral problems at Hawthorne began immediately following his enrollment. On several occasions from September 2006 through February 2007, staff reported that J.Y. was defiant and violent. (*Id*. 5–6 (Dkt. No. 1 at 11–12).) As a result, and with Ms. Thomas' approval, J.Y. was subject to a special education eligibility evaluation in early 2007. That evaluation "recognized that [J.Y.'s] disability interfered with his ability to participate in small and large group activities with age appropriate social and emotional coping skills . . . [and] also impacted his ability to progress at the same rate and ability as his same age peers." (*Id*. 6 (Dkt. No. 1 at 12).)

Shortly after the evaluation was complete, SSD notified Ms. Thomas by letter dated April 3, 2007, that J.Y.'s enrollment would be terminated at the end of the week of April 9, 2007. That letter referenced the conditional language in the original acceptance letter and stated: "based upon the needs identified during [J.Y.'s] recent special education evaluation, the District does not currently have capacity in a program that can appropriately serve his needs. Therefore . . . he will need to return to the district where you live." (SSD Ltr. Apr. 13, 2007 (Dkt. No. 18 at 3).) On April 5, 2007, the parties met and agreed to an individualized education plan ("IEP") for J.Y. The IEP would have had J.Y. attending an emotional and behavior disorder (EBD) class. (ALJ Order 14 (Dkt. No. 1 at 20).) SSD, however, did not make the placement available, arguing instead that because Hawthorne does not have an EBD class and the EBD classes at other schools in the district are either at, or over, capacity, J.Y.'s enrollment should be terminated. (*Id*. 15 (Dkt. No. 1 at 21).)

Ms. Thomas requested a due process hearing on April 13, 2007, seeking review of SSD's actions

ORDER – 2

and omissions.[1] An ALJ heard the matter on May 11, 2007, and issued a final Order, including findings of fact and conclusions of law, on June 12, 2007. (*Id.* 1 (Dkt. No. 1 at 7).) After finding that he had jurisdiction to consider whether a proposal to terminate the enrollment of a nonresident disabled student violates the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. §§ 1400 *et seq.*,[2] the ALJ identified five issues as raised by Ms. Thomas (ALJ Order 2 (Dkt No. 1 at 8)), and found in J.Y.'s favor on two. (*Id.* 17 (Dkt. No. 1 at 23).) Specifically, the ALJ found that SSD's proposal to terminate J.Y.'s enrollment amounted to an impermissible "change of placement" in violation of IDEA. The ALJ also found that SSD violated IDEA in failing to implement the IEP agreed upon on April 5, 2007. Failure to provide the placement and services agreed to in the IEP denied J.Y. "a free appropriate public education" (referred to in IDEA cases as "FAPE"). As a result, the ALJ awarded J.Y. twenty school days of compensatory education. (*Id.*)

The ALJ found in favor of SSD on the three other issues raised by Ms. Thomas. Specifically, the ALJ found that neither the process used to identify and evaluate J.Y.'s disability, nor his brief exclusion from school for disciplinary reasons denied him a FAPE. In addition, the ALJ found that the IEP was reasonably calculated to provide J.Y. a FAPE. (*Id.*) Finally, both parties requested attorneys' fees and costs, but the ALJ denied those requests, noting that pursuant to § 1415(i)(3), state or federal district court is a superior forum for such requests. (*Id.* 16 (Dkt. No. 1 at 22).)

**II.    RULE 54(d)**

Defendant argues that Plaintiff's summary judgment motion is premature. Defendant cites Federal Rule of Civil Procedure 54(d)(2), which generally governs motions for attorneys' fees and requires that, "[u]nless otherwise provided by statute or order of the court," claims for fees must be presented by motion "filed no later than 14 days after entry of judgment." FED. R. CIV. P. 54(d)(2)(B). Because here,

---

[1] SSD challenged the sufficiency of Ms. Thomas' request, but the Administrative Law Judge ("ALJ") denied this challenge. (ALJ Order 1 (Dkt. No. 1 at 7).)

[2] All statutory citations in this Order are to IDEA, 20 U.S.C. §§ 1400 *et seq*.

ORDER – 3

at the summary judgment stage, the Court has yet to enter judgment, Defendant argues Plaintiff may not yet bring a motion for fees.

Defendant offers no authority for its position other than the language of the Rule, which is inapplicable here. An action brought under IDEA solely seeking attorney's fees and costs is a *separate* cause of action, distinguishable from the action on the merits already decided on the administrative level. Rule 54(d) "presupposes that a final judgment is entered by a court and that a post-judgment request for fees and costs is ancillary to that judgment and not a separate cause of action." *J.B. v. Essex-Caledonia Supervisory Union*, 943 F.Supp. 387, 390 (D. Vt. 1996). Furthermore,

> [U]nder Rule 54, the request for fees is presumed to be initiated by motion. The IDEA requires that all actions for attorneys' fees and costs be determined by actions in the district courts. 20 U.S.C. § 1415(e)(4). Actions for legal fees cannot be initiated by motion. Rule 54 is therefore inapplicable, especially when, as here, the case was resolved during the administrative process, and no judgment was entered.

*Id.* The Ninth Circuit has not considered this issue, but the Court finds the above reasoning persuasive. Accordingly, the Court holds that Rule 54(d) does not apply to actions brought under IDEA to recover attorney's fees where the merits of the case were resolved in an administrative proceeding and the outcome of that proceeding is not challenged. Plaintiff's motion is, therefore, timely.

**III.   LEGAL STANDARD**

*A.    IDEA*

IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education[.]" § 1400(d)(1)(A). As part of providing a FAPE, school districts receiving federal funding to assist in educating children with disabilities must establish an IEP for each child with a disability. §§ 1411, 1412. In addition, several procedural safeguards must be made available by which a parent[3] may be included in the process of identifying an IEP and may bring grievances about a district's compliance with IDEA. § 1415. A parent who believes that her child has been denied a FAPE is entitled

---

[3] IDEA defines "parent" to include a guardian. § 1401(23).

ORDER – 4

to pursue mediation, an "impartial due process hearing," and an appeal to the state education agency. § 1415(e), (f), (g).

The federal district courts hear two types of IDEA actions: those challenging the merits of an administrative decision and those solely seeking attorney's fees and costs. "Any party" may bring a civil action challenging the merits of an administrative decision in either a state or federal district court. § 1415(i)(2)(A). Such an action may eventually include a motion for attorney's fees and costs, however, the request would be ancillary to the court's judgment on the merits. In addition, "a prevailing party who is the parent of a child with a disability" may bring an action solely seeking an award of attorney's fees and costs incurred in obtaining affirmative relief, where liability was established outside of the district court action itself, such as in an administrative proceeding. § 1415(i)(3)(B)(i)(I); *see also Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1026 (9th Cir. 2000).

This is an action brought solely for attorney's fees and costs. (Compl. ¶ 4 (Dkt. No. 1).) "The purpose of the fee provision in IDEA is to enable parents or guardians of disabled children for whom the statute was enacted to effectuate the rights provided by the statute." *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 856 (3d Cir. 2006); *see also Barlow-Gresham Union High Sch. Dist. No. 2 v. Mitchell*, 940 F.2d 1280, 1286 (9th Cir. 1991) (finding that good faith on the part of the defendant school district does not justify denying attorney's fees because "attorney fees awards are not designed to penalize defendants, but are rather to encourage injured individuals to seek judicial relief") (quoting *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250 (9th Cir. 1981)).

In order to award attorney's fees sought under IDEA, a court must find the plaintiff-guardian (1) is a "prevailing party" and (2) seeks "reasonable" attorney's fees. *See Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1117 (9th Cir. 2006). Importantly, "[a] prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Seattle Sch. Dist. No. 1. v. B.S.*, 82 F.3d 1493, 1502 (9th Cir. 1996) (quoting *Abu-Sahyun v. Palo Alto Unified Sch. Dist.*, 843 F.2d 1250, 1252 (9th Cir. 1988)).

ORDER – 5

### B. *Summary Judgment*

Summary judgment motions are governed by Federal Rule of Civil Procedure 56, which provides in relevant part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Nevertheless, the opposing party may not defeat a motion for summary judgment in the absence of significant probative evidence tending to support its legal theory. *Intel. Corp. v. Hartford Accident & Indemnity Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

### IV. ANALYSIS

### A. *Prevailing Party*

The parties do not challenge the ALJ's Order, therefore, the Court accepts its findings as undisputed. Although a district court action for attorney fees under IDEA is an independent proceeding which includes a right to a trial, the question for the Court is not who *should* have prevailed, but only

ORDER – 6

who did prevail. *See, e.g.*, *Comm'r, INS v. Jean*, 496 U.S. 154, 163 (1990) (cautioning that a request for fees "should not result in a second major litigation" revisiting the merits of the underlying action) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Accordingly, whether Plaintiff is a prevailing party within the meaning of IDEA is a question of law, appropriately resolved on summary judgment.

The inquiry focuses on whether the plaintiff succeeded on any significant issue in litigation, such that some of the benefit sought in bringing the suit was achieved. *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th Cir. 1994) (quoting *Hensley*, 461 U.S. at 433). Such success is achieved where the result "material[ly] alter[s] . . . the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). In addition, "[t]here must be a causal link between the litigation brought and the outcome gained." *Student W.*, 31 F.3d at 1498.

As an initial matter, the Court rejects Plaintiff's argument that the fact that J.Y. was allowed to "stay put" at Hawthorne through the end of the school year amounts to a win establishing J.Y. as a "substantially prevailing" party. As Plaintiff himself admits, when a party seeks to enforce his rights under IDEA by requesting a due process hearing "the school district [is] *required, by federal law*, to allow him to stay in his school" for the duration of the proceedings. (Pl.'s Reply 9 (Dkt. No. 22)) (emphasis added). *See* § 1415(j). The triggering of IDEA's stay put provision is wholly unrelated to the merits of J.Y.'s claim. Thus, while there is a "causal link between the litigation brought and the outcome gained" in that the stay put provision is triggered by bringing the action, just about *any* action brought under IDEA might result in this outcome. The stay put provision operates as an automatic preliminary injunction or temporary restraining order. It serves to preserve the status quo and cannot, by itself, serve as a basis for finding the plaintiff has prevailing party status. *See Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990); *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

ORDER – 7

In contrast, the ALJ's finding that SSD's proposed termination of J.Y.'s enrollment amounted to a "change in placement" in violation of IDEA was a success for Plaintiff on a significant issue. IDEA only permits a "change in placement" where a parent or guardian has given consent, or after written notice and an opportunity for a hearing. *See Student W.*, 31 F.3d at 1495. The ALJ found that when SSD admitted J.Y. for a one-year period, it could not terminate his enrollment within that period simply because it withheld the right to do so in the acceptance letter and later determined it lacked the resources to accommodate him. "Having enrolled the Student for a one year period, the District may terminate the enrollment only if it complies with the procedural and substantive requirements of the IDEA." (ALJ Order 11 (Dkt. No. 1 at 17).) Because SSD proposed terminating J.Y.'s enrollment in the April 3, 2007 letter, without consent or before an opportunity for a hearing, that proposed termination was a "change in placement" in violation of IDEA. (*Id*.) This finding materially altered the legal relationship between the parties and, although not in itself resulting in an award of compensation, it nevertheless is a "tangible result" justifying the award of fees. *Aguirre*, 461 F.3d at 1121 (quoting *Wilcox v. Reno*, 42 F.3d 550, 555 (9th Cir. 1994)).

Moreover, the ALJ found that SSD's failure to implement the negotiated IEP denied J.Y. a FAPE: a determination that a student was denied a FAPE "is the most significant of successes possible under the [IDEA]." *Park v. Anaheim*, 464 F.3d 1025, 1036 (9th Cir. 2006); *see also Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1234 n.3 (9th Cir. 2007) (noting that the determination that a student was denied a FAPE might alone be sufficient to confer prevailing party status). In addition, the ALJ awarded J.Y. twenty days of compensatory education. Accordingly, the Court finds the ALJ's determinations in J.Y.'s favor more than sufficient to confer prevailing party status on Plaintiff.

### B.    *Reasonableness of Fee Request*

Having found that Plaintiff substantially prevailed, the Court must determine whether the

ORDER – 8

requested fee is reasonable. *See Aguirre*, 461 F.3d at 1117. Not all who formally "prevail" are entitled to an award of attorneys' fees under IDEA. *See id.* at 1121. However, the court's discretion to deny a prevailing party fees is narrow. *Abu-Sahyun*, 843 F.2d at 1252. The court begins by determining "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The court also considers the level of a plaintiff's success: "a partially prevailing plaintiff generally may not recover fees for her unsuccessful claims[.]" *Aguirre*, 461 F.3d at 1118.

Plaintiff seeks a total award of $23,562.68 in attorney's fees and costs.[4] After the ALJ issued its Order, Plaintiff requested SSD pay Plaintiff, as the prevailing party, $14,751.79 in fees and costs incurred through June 13, 2007. When SSD refused, this action was initiated. (Girard Decl. ¶ 9 (Dkt. No. 8).) The amount Plaintiff now requests includes fees and costs incurred in this action, as well as in the underlying administrative proceeding.

### *1.    Reasonable Hourly Rate*

In support of his request of an hourly rate of $250 per hour, Plaintiff's counsel, David Girard, submits his own declaration, attesting that he has practiced in the area of education and special-education law for approximately 12 years. (Girard Second Decl. ¶ 3 (Dkt. No. 23).) He has been in private practice since January 2006, primarily working in the areas of disability law and education law. (*Id*. ¶ 1.) Until the end of 2006, his hourly billing rate was $200 per hour; on January 1, 2007, he raised his rate to $250 per hour. (*Id*. ¶ 3.) In addition, Plaintiff submits declarations from three other attorneys with significant experience practicing in the areas of education and disability law. Each of these attorneys submit that they are familiar with the prevailing rates in the community and based upon that and their knowledge of Mr.

---

[4]Plaintiff's Motion for Summary Judgment sought $23,712.68 in attorney's fees and costs. (Pl.'s Mot. 14 (Dkt. No. 7).) Plaintiff has since withdrawn his request for $150 in fees related to the appeal filed challenging SSD's termination of J.Y.'s out of district transfer status, an action not brought under IDEA. (Girard Second Decl. ¶ 15 (Dkt. No. 23).)

ORDER – 9

Girard's skill and experience, they believe that his rate of $250 per hour is reasonable. (Howard Powers Decl. ¶ 5 (Dkt. No. 9); Jeanette Cohen ¶ 19 (Dkt. No. 10); Brent Pattison ¶ 10 (Dkt. No. 11).)

Defendant argues that Mr. Girard's requested fee rate "substantially exceeds the hourly rate prevailing in the community." (Def.'s Resp. 18 (Dkt. No. 15).) In support, Defendant submits a declaration from Defendant's counsel, Shannon McMinimee, attesting that one of Plaintiff's affiants, Mr. Powers, who attests that he charges $250 per hour for his services, recently submitted a fee request in another matter indicating that he charged the parent in that case $200 per hour. (McMinimee Decl. ¶ 15 (Dkt. No. 17).) Defendant neither attaches the request nor identifies precisely when that request was made, only that it was in an action where "the parent . . . prevailed on a very limited basis." (*Id.*) In addition, Defendant submits that Mr. Girard's other affiants, Ms. Cohen and Mr. Pattison, who, Defendant argues "appear to have considerably greater education law experience" than Mr. Girard, charge $200.00 and $175.00 per hour, respectively. (Def.'s Resp. 18 (Dkt. No. 15); Cohen Decl. ¶ 19 (Dkt. No. 10); Pattison Decl. ¶ 10 (Dkt. No. 11).)

Fees awarded under IDEA are to be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." § 1415(i)(3)(C). The court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation; it should not make its determination by referencing the rates actually charged to the prevailing party. *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986). The party seeking fees has the burden of producing evidence, in addition to declarations of interested counsel, that "the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).

The Court finds that Plaintiff has submitted evidence sufficient to support a reasonable rate of

ORDER – 10

$225 per hour. In reaching this conclusion, the Court does not rely on Defendant's attempts to discredit Mr. Power's declaration that he charges $250 per hour in education law cases, as Defendant provides insufficient information to compare the "recent" request it refers to with the instant action. However, Mr. Powers is the only one of Plaintiff's three affiants who charges $250 per hour, and he has been practicing education law for almost thirty years. (Powers Decl. ¶ 1 (Dkt. No. 9).) Ms. Cohen and Mr. Pattison charge less, however, neither have been practicing law as long as Mr. Girard. In addition, all three affiants positively attest to Mr. Girard's skill and reputation in the community.

### 2. *Hours Reasonably Expended*

Defendant argues first that the billing records Plaintiff submits in support of his request for fees and costs "include multiple entries devoted to reviewing the same document, the expenditure of time preparing unnecessary documents, and vague entries where it is impossible to tell what, if any, recoverable legal work was performed." (Def.'s Resp. 16 (Dkt. No.15).) Specifically, Defendant points to two entries titled "review ALJ scheduling order," seven titled "review prehearing order and scheduling order," three entitled "draft and revise letter to [ALJ] re failure of resolution meeting," and thirty-seven entries titled "mail correspondence with [the District's counsel.]" (*Id*.)

The majority of Defendant's complaints are nit-picky. While the court may adjust the requested hours down if it believes the documentation to be inadequate, the hours duplicative, or the hours excessive or unnecessary, *Chalmers*, 796 F.2d at 1210, the Court must always keep in mind that "[t]he purpose of the fee provision in IDEA is to enable parents or guardians of disabled children for whom the statute was enacted to effectuate the rights provided by the statute." *P.N.*, 442 F.3d at 856. Accordingly, the Court will not hover over counsel and subtract a minute here or two minutes there in the absence of significant probative evidence tending to support Defendant's argument that the hours expended were, in fact, unreasonable. Moreover, "the most critical factor is the degree of success obtained." *Hensley*, 461

ORDER – 11

U.S. at 436.

That being said, Defendant is correct that Plaintiff may not be awarded fees associated with participating in resolution sessions. § 1415(i)(3)(D)(iii). Plaintiff is ORDERED to submit a revised fee request that does not include hours expended related to resolution sessions. As for the only other excludable work for which Defendant contends Plaintiff requests fees, Plaintiff has withdrawn his request for fees related to J.Y.'s transfer appeal. (Girard Second Decl. ¶ 15 (Dkt. No. 23).)

The Court disagrees with Defendant's contention that the billing records submitted by Plaintiff are too "vague." Nor does the Court find thirty-seven emails between counsel over the course of four months to be excessive. Similarly, the Court finds unpersuasive Defendant's arguments that Plaintiff's preparation for the hearing was unreasonable, due to the fact that SSD ended up calling only one of ten potential witness it originally listed. In sum, the Court has reviewed the time sheets and declarations presented by counsel and finds the time expended, minus that related to resolution sessions, reasonable.

### 3. *Level of Success*

Finally, courts must apply the *Hensley* "level of success" standard, and if appropriate, reduce the base fee award to reflect the plaintiff's level of success in the case. *See Aguirre*, 461 F.3d at 1120–21. The purpose of the level of success inquiry is to "help deter submission of multiple, nonmeritorious claims." *Id.* at 1120. Moreover, the court should keep in mind that "[a]ll children suffer when the schools' coffers are diminished on account of expensive, needless litigation." *Id.* However, "[t]here is no precise rule or formula for making these determinations," and "[t]he court necessarily has discretion in making this equitable judgment." *Id.* at 1121 (quoting *Hensley*, 461 U.S. at 436–37). The Court also finds the following from *Hensley* helpful in applying this rather amorphous standard:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise

ORDER – 12

alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435 (internal citation omitted).

The ALJ found in favor of SSD on three of the issues raised by Ms. Thomas, and in favor of J.Y. on two. Specifically, the ALJ found that neither the process used to identify and evaluate J.Y.'s disability nor his brief exclusion from school for disciplinary reasons denied him a FAPE. In addition, the ALJ found that the IEP was reasonably calculated to provide J.Y. a FAPE. Nevertheless, the ALJ *did* find that J.Y. was denied a FAPE when SSD failed to implement the negotiated IEP.

A determination that a student was denied a FAPE "is the most significant of successes possible under the [IDEA]." *Park*, 464 F.3d at 1036. Thus, it is fair to say that Plaintiff's level of success was high. In addition, the Court notes that the ALJ's finding could benefit other nonresident disabled students as it disapproved of SSD's position that it need not comply with IDEA in terminating enrollment of nonresident disabled students.

However, the ALJ found that Ms. Thomas presented *no* evidence supporting her claim that the evaluation process used to identify J.Y.'s disability was inappropriate. (ALJ Order 12 (Dkt. No. 1 at 18).) The Court's review of the ALJ's Order satisfies it that the other two claims on which Plaintiff did not prevail were good faith alternative legal grounds for the desired outcome. Accordingly, the Court finds that Plaintiff's final fee award should be reduced 10% to reflect the level of success in this case. *See Aguirre* at 1121 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

### C. Kerr Factors

In the discussion above, the Court has already touched upon several of the *Kerr* factors (e.g., review of hourly rate included consideration of the requisite skill and the customary fee, while review of

ORDER – 13

time expended included consideration of the time and labor required and the level of success determination required an assessment of the results obtained). *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1976). Other *Kerr* factors not yet included in the Court's analysis also support Plaintiff's fee request. Specifically, Mr. Girard is a solo practitioner and for that reason, was precluded from taking other employment during the course of this matter. In addition, because Plaintiff could not afford to pay for an attorney, Mr. Girard took the case on a contingency basis. (Girard Decl. ¶ 12 (Dkt. No. 8).) Thus, the Court finds that the *Kerr* factors support the fee award.

## V.     MOTION TO STRIKE

The Court may, "[u]pon motion made by a party . . . order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are disfavored, and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).

Defendant moves to strike Plaintiff's entire Statement of Facts, claiming that "a significant portion of the facts set forth . . . are nothing more than bare allegations that are not supported by any affidavit, declaration, or other form of evidence." (Def.'s Resp. 21 (Dkt. No. 15).) The Court denies Defendant's motion for two reasons. First, Defendant fails to specifically identify those stated facts that it alleges are wholly unsupported. Without guidance, the Court cannot apply the standard and be satisfied that it is, in fact, clear that the matter to be stricken has no possible bearing on the subject matter of the litigation. Second, as discussed above, neither party has challenged the ALJ's findings of fact or conclusions of law. Therefore, the Court relied on the ALJ's findings of fact—not the parties' Statements of Fact—in deciding this motion for summary judgment.

\\

ORDER – 14

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment, finding that Plaintiff was a "prevailing party" and is entitled to a reasonable award of fees and costs. However, the Court finds that the reasonable hourly rate in this case is $225 per hour, not $250 per hour. In addition, the Court finds that Plaintiff may not seek fees for work relating to resolution sessions. Plaintiff is ORDERED to submit, within 10 court days of issuance of this Order, a revised, complete and updated fees and costs request, including supporting time sheets, reflecting these findings. Upon receipt, the Court will issue an Order consistent with the findings herein. Defendant's Motion to Strike is DENIED.

SO ORDERED this 16th day of November, 2007.

JOHN C. COUGHENOUR
UNITED STATES DISTRICT JUDGE

ORDER – 15